HON. HENRY McIVER, CHIEF JUSTICE.
HON. YOUNG J. POPE, ASSOCIATE JUSTICE.
HON. EUGENE B. GARY, ASSOCIATE JUSTICE.
HON. IRA B. JONES, ASSOCIATE JUSTICE.

HUGHES v. EDISTO CYPRESS SHINGLE CO.

SCOTT v. SAME.

1. RES JUDICATA.—A consent order fixing the amount of a mortgage debt, and fee of mortgagee's attorney, is binding on all parties consenting.

2. ACCOUNTING—RECEIVER—CHATTEL MORTGAGE.—Expenses of insurance, watchman, &c., are properly charged against proceeds of property placed in hands of receiver to be sold and applied on mortgage debt.

3. A CICUIT JUDGE who has completed his labors in one Circuit and gone into another, cannot then modify a decree which he had filed while in that Circuit.

4. EVIDENCE—ESTOPPEL,—PRACTICE.—When a party permits a written instrument to be introduced in evidence without proof of execution, he cannot afterwards question its execution.

5. PERSONAL PROPERTY—FIXTURES—A SAW MILL AND ENGINE placed

1—51

on land for purpose of sawing timber, are not fixtures, but personal property.

6. CORPORATIONS—MORTGAGE—MACHINERY.—*Query:* Do the provisions of Rev. Stat., sec. 1524, requiring private corporation to issue certain notices, &c., before assuming a bonded debt, apply to cases where such corporations issue mortgages for purchase money of machinery necessary for charter purposes?

7. IBID.—IBID.—IBID.—A JUNIOR JUDGMENT CREDITOR cannot question the authority of the officers of a private corporation to execute a recorded mortgage, given to secure the purchase money of machinery sold to the corporation for corporate purposes.

8. COSTS—A CIRCUIT JUDGE cannot require the fees of a stenographer, for assisting him in the preparation of the decree in a cause, to be paid out of the fund in Court.

9. APPEAL BOND—A CIRCUIT JUDGE has no authority to require a litigant, who appeals from his decree, to execute a bond as a condition to the staying of the sale thereby.

Before BUCHANAN, J., Barnwell, February, 1896. Modified.

Action by R. M. Hughes and other judgment creditors against Edisto Cypress Shingle Company, Bailey-Lebby Company, Perkins Manufacturing Company, and the directors of the company; also an action by the directors of said company against the company and its officers and D. M. Webb.

The following is the Circuit decree, filed on 26th February, 1896:

This action came on for a hearing at the November term of the Barnwell County Court upon the report of the master, A. Howard Patterson, to whom it had been referred to take the testimony, and report the same to this Court. The plaintiffs, on behalf of themselves and all other creditors of the defendants, Edisto Cypress Shingle Company, brought this action to subject the property of the defendants, Edisto Cypress Shingle Company, to the payment of the debts of those plaintiffs who are judgment creditors, and for the purpose of vacating the mortgage of the Bailey-Lebby Company and Perkins Company, and to enjoin and

restrain the Bailey-Lebby Company from enforcing its mortgages against the Edisto Cypress Shingle Company. The Edisto Cypress Shingle Company and the Bailey-Lebby Company are corporations duly chartered by the secretary of state under the existing laws of this State, and are *business corporations.* Perkins & Co. is a business concern, consisting of Willis J. Perkins, doing business at Grand Rapids, Mich., and who was named in plaintiffs' complaint as a corporation and served as such, but subsequently petitioned the Court to be made a party to this suit as Willis J. Perkins, doing business as Perkins & Co. The other defendants named in plaintiffs' complaint are judgment creditors of the Edisto Cypress Shingle Company. It appears from the testimony that the Edisto Cypress Shingle Company executed, or attempted to execute, on the         day of December, 1892, a chattel mortgage to the Bailey-Lebby Company for         dollars, which debt was afterwards merged into one debt and became incorporated with that secured by a chattel mortgage executed by said Edisto Cypress Shingle Company to the Bailey-Lebby Company, on December 22d, 1893, for the sum of $1,765.92. The Perkins paper, it is claimed by Willis J. Perkins, is a chattel mortgage, as was held in *Perkins* v. *The Loan and Exchange Bank*, 43 S. C., 39. The propositions in this case are clearly defined. The plaintiffs, together with all of the creditors of the Edisto Cypress Shingle Company, attacked the alleged mortgages of the Bailey-Lebby Company and that of the Perkins Company, upon the grounds that neither of the said mortgages were authorized to have been executed by the Edisto Cypress Shingle Company; that no advertisement appeared in any paper authorizing the execution of said mortgages, and that neither the stockholders nor the directors (save and except A. N. Webb and the secretary of said company) knew that said mortgages were executed, and never authorized the execution thereof. The various creditors obtained their judgments against the Edisto

Cypress Shingle Company, and they are in every respect regular. The plaintiffs applied to Judge Witherspoon for an order enjoining and restraining the Bailey-Lebby Company from executing its mortgages over the property of the Edisto Cypress Shingle Company, from selling the same, and for the appointment of a temporary receiver, and C. B. Free was, under the order of Judge Witherspoon, appointed as temporary receiver; and upon the hearing of the return to said order, the Bailey-Lebby Company obtained an order by which all of the chattel property, including shingles, mules, horses, &c., described in its said mortgage, was turned over to it, with the right on the part of said C. B. Free, who was appointed permanent receiver, to bring any suit or suits for its recovery. The plaintiffs, however, after the appointment of C. B. Free as permanent receiver, entered into a consent order, on the part of themselves, with the Bailey-Lebby Company, by which it was agreed that the plaintiffs, R. M. Hughes, H. P. Jennings, and A. W. Whetstone, admitted that the mortgage of the Bailey-Lebby Company, bearing date December 22d, 1893, was a valid, subsisting and *bona fide* mortgage, and fixed the debt due the mortgage at $1,500, and this order is binding upon the plaintiffs and the Bailey-Lebby Company; so that the only question to be determined is who are bound by said order, and what is the status of the mortgage of the Bailey-Lebby Company. I find as a fact that the mortgage of the Bailey-Lebby Company, dated December 22d, 1893, is *bona fide*, and was made with the full knowledge of the company and duly authorized by the directors of said company, and that under said order C. B. Free, acting as agent of Bailey-Lebby Company, sold chattel property of said corporation in part, and the Bailey-Lebby Company sold the balance, consisting of two mules and three oxen, for $137.50, and that the Bailey-Lebby Company sold of shingles embraced in its mortgage: 325,600 clippers at $1, $325.60; 216,570 Star A at $1.25, $270.71; 280,250 prime at $2, $560.50; 235,635 best at $2.75,

$647.96—$1,804.77; and that the value of the shingles as set forth above was the real worth of the shingles aboard the cars at Edisto, S. C., and that the Bailey-Lebby Company is responsible to C. B. Free, receiver, for $1,804.77, the value of the said shingles, and $137.50, the value of the said mules and oxen, making a total of $1,942.27; and that as to the plaintiffs, the Bailey-Lebby Company is entitled to credit for: Amount fixed by consent order, $1,500; paid May rent of land, $100; loading shingles, etc., C. B. Free, $103.35; taxes, $46—making a total of $1,749.35; which debt from the amount received, $1,942.27, leaves a balance due the receiver as to these plaintiffs of $192.92, but as to the other creditors, the Bailey-Lebby Company's debt stands on a different basis. I find that the Bailey-Lebby Company had received the shingles shipped to it, and from cash arising from the sale of shingles embraced in its mortgage after the date of its last mortgage, December 22d, 1893, the sum of $789.61, and that this amount is to be credited upon the notes of the Bailey-Lebby Company, and that these shipments were made before the maturity of the notes respectively, and as they did not bear any interest until maturity, the first two notes were paid except a balance of $76.55, and on this sum the defendant, the Bailey-Lebby Company, is entitled to interest from the 22d day of June, 1894, until the maturity of the fourth note, and the interest amounts to $4.30. So the balance of the mortgage debt would be $930.61; the cost of loading shingles, etc., by C. B. Free, $103.35; rent of land, $100; for taxes, $46; which leaves the Bailey-Lebby Company indebted to C. B. Free, as receiver, as to the other creditors, in the sum of $712.21; and the question, which was so earnestly discussed, as to whether the machinery is fixtures or chattels, does not enter into the Bailey-Lebby Company's mortgage, as said mortgage had been paid in full by the sale of the chattel property, and was duly recorded.

I find that the Perkins & Co. paper, as presented at the trial, consists of two parts.

First. A printed form, with blanks filled out in the handwriting of S. S. Ingram, and signed by him as salesman for Perkins & Co. It is as follows: "Branchville, S. C., February 23d, 1893. Messrs. Perkins & Co., Grand Rapids, Mich.: You will please ship the following goods, that have prices carried out, *via* best route South Carolina Railroad, our address at Edisto Sta., South Carolina, for which we agree to pay you as follows: (Then follows conditions upon which machinery will be shipped.) Order book , No. of order . Page . S. S. Ingram, salesman."

Second. An order, wholly typewritten, which was signed by the Edisto Cypress Shingle Company. It is as follows: "Edisto Cypress Shingle Company, Branchville, S. C.: Ship to Perkins & Co., Edisto Station, S. C., on the South Carolina Railroad, four miles west of Branchville, prepay freight, one thirty-eight Grand Mogul double back shingle machine, with stop motion, long and short block attachment, chandle iron carriages, and all the latest improvements for sixteen and eighteen shingle wide carriages. (Then follows an enumeration of the different pieces of machinery ordered.) Total net value of above, $2,611.53. [L. S.] Edisto Cypress Shingle Company, per A. N. Webb, president. P. O. address, Edisto, Branchville Co., S. C. Witness: J. L. DeTreville, ex-agent. E. T. Summersett."

"Before me, A. M. Kittrell, personally appeared John L. DeTreville, who, being duly sworn, says: That he saw the seal of the Edisto Cypress Shingle Company, by A. N. Webb, president, a body corporate, affixed to this instrument, and that the same was then duly executed and delivered, and that he witnessed the execution thereof."

By inspection, I find that the above wholly typewritten sheet was executed by A. N. Webb, president of the Edisto Cypress Shingle Company, on or before the 7th day of February, 1893, and witnessed by John L. DeTreville and E. T. Summersett, and was sworn to on the 7th day of February, 1893, by John L. DeTreville (the date of probate was written out in full); that said order was wholly typewrit-

ten, and did not contain any conditions whatever, and the order was pasted on to the wholly printed sheet set forth above; that the printed sheet had the blanks filled out in ink in the handwriting of S. S. Ingram, which were signed and bore date of the 23d day of February, 1893. There was no testimony on the part of Perkins & Co. to show that those papers were in any way connected with each other, or that there was any mistake as to the date; and I am convinced from the testimony before me, and so find as a fact, that the Edisto Cypress Shingle Company, as a corporation, never intended to, and never did, execute any mortgage to Perkins & Co.; but that the wholly typewritten sheet was pasted on the "Ingram or printed order" after it passed out of the hands of A. N. Webb, either by the agent of Perkins & Co., or after it had arrived at the office of Perkins & Co.; and that the register, in recording the Ingram order, did so without having it properly probated, and without warrant or authority of law, and said recording does not operate as notice; and, further, I find that the machinery was shipped by Perkins & Co. to Perkins & Co., at Branchville; and on the payment of $1,000, leaving a balance now claimed to be due, said Perkins & Co. delivered the machinery to the Edisto Cypress Shingle Company, freed from conditions, and that, with its knowledge and consent, the machinery was placed, with the assistance of their agent, in buildings especially erected for the reception of this peculiar machinery, and securely and firmly fastened to said building, for the purpose of erecting a shingle plant on land leased for a period of ninety years. I am thoroughly satisfied that both Perkins & Co., the Edisto Cypress Shingle Company, and the Bailey-Lebby Company fully intended that this machinery should become fixtures and permanent improvements upon the land which was purchased for the purpose of erecting a permanent shingling plant, in order to enable the Edisto Cypress Shingle Company to utilize the large timber franchises which it held upon adjacent lands, and which franchises,

without this plant, erected for the express purpose of cutting into boards and lumber, the cypress timber would have been useless. I gather from the testimony and the evidence at the trial, and the argument of counsel, that this building is a three story one, erected especially for the reception of this peculiar kind of machinery, and it is within a few feet of the water's edge, and fully furnished with all devices to enable it to drag out of the water the large and heavy cypress logs and cut them into boards and shingles; and that each and every part of the machinery is necessary for the full and complete equipment of the building, and without any part of it the plant would be practically useless and would have to stop; the boilers are encased in brick and the engine firmly laid upon its foundation, and the shingling machines were directly belted from the engine by means of bands, and fully follows the analogy of a cotton gin placed upon the land as a permanent improvement. *Ex parte Dickenson*, 29 S. C., 453.

Having found, as I am compelled to, from the physical appearance of the paper, that the Perkins paper consists of two parts, and that one was not executed by the Edisto Cypress Shingle Company, but by the salesman of Perkins & Co., S. S. Ingram, at a date subsequent and after the order had passed out of the hands of the Edisto Cypress Shingle Company (which "the Ingram order" would have made it a chattel mortgage), I find that Perkins & Co. has no lien over the machinery sold either as a chattel or real mortgage. The recording laws of our State fully provide as to how a mortgage shall be recorded, if a chattel, and how if belonging to realty, and the Perkins paper does not conform to either of these requirements, as there is nothing in the order of the Edisto Cypress Shingle Company to make it a chattel mortgage, and it is not recorded in the real estate book at all. Having found that it was the intention of all parties that this machinery should become permanent fixtures and be incorporated with the real estate, I conclude that, as the creditors have reduced their

various claims to judgment, that the lien of their several judgments constitutes the only lien upon said property, and that they are subsequent creditors without notice. Having found that the Perkins paper is not either a real or chattel mortgage, it is not necessary to consider the question as to whether the property is realty or personal property, except for the purpose of adjusting the different liens of the various creditors. I have found that this machinery, by the consent of all the parties, became, with their knowledge and with their consent, fixtures, and will briefly give some of the authorities which support this conclusion. Jones on Chattel Mortgage, p. 116, sec. 132. If personal property, such as machinery, already subject to a chattel mortgage, be affixed to the realty, with the assent of the mortgagee, it becomes a question whether the mortgage lien is lost as against an existing mortgage of the realty, or as against subsequent purchasers, mortgagees of the realty, or creditors, who subsequently obtain liens upon it. The intention and agreement of the parties has much to do with the determination whether chattels annexed to the realty retained their character as personal property. But such intention and agreement are subjected in a considerable degree to the essential character of the chattels themselves and to the manner in which they are annexed to the realty. To make effectual an intention that the chattels shall retain their character of personalty, it is essential that they be so annexed that they can be removed without serious damage to the freeholder and without substantially destroying their own qualities of value. The nature of the articles annexed may be such, or the mode of their annexation may be such, that they lose the essential attributes of personal property by annexation itself. *Richardson* v. *Copeland*, 6 Gray (Mass.), 536. Syllabus—"A steam engine set upon a granite block and fastened down by a bolt, and a boiler set in brick in such a manner that it cannot be removed without taking down the bricks, and both used for running machinery in adjoining shop, became a part of

the realty; and the evidence of the general usage and custom between manufacturers and purchasers of such property to regard it as personalty, is incompetent; and a mortgage thereof to the manufacturer as to personal property, executed contemporaneously with the bill of sale from him after the engine and boiler had been put in operation, passes no title in them as against a subsequent purchaser of the real estate, though without notice of the mortgage." Opinion—"Upon the facts stated, the Court are of the opinion that the engine and boiler, having been erected on the premises of Josiah Richardson, of which he was owner in fee, subject to several mortgages, became annexed to the freehold. This real estate comprised a manufactory occupied and carried on by said Richardson, and the engine was erected to furnish power for such machinery. The steam boiler was permanently set in brick work and could not be removed without taking down the brick work, and the engine was permanently annexed to the buildings. The permanent annexation of the engine and boiler to the freehold *de facto* rendered them part of the realty, and his agreement with the builder to give them a mortgage thereon as personal property against all of those who took title to the estate in fee, was inoperative and void. No title as to those articles passed as personal property to the mortgagee which they could assert against a third party." *Wade* v. *Brewing Co.*, 10 Wash., 284. "Where a building has been built for brewing purposes, and to further such objects there has been built into it as an essential a direct expansion refrigerating plant, such machinery becomes a part of the realty as to mortgagee of the premises, although the contract of sale between vendor and purchaser of the machinery treats it as personal property." Opinion—"In ascertaining whether such machine does become a part of the realty in favor of mortgagees, the rule is that the manner, purpose and effect of annexation to the freehold must be regarded. If a building be erected for a definite purpose, or to enhance its value for occupation, whatever is

built into it to further those objects becomes a part of it, even though there be no permanent fastenings, such as would cause a permanent injury if removed. But mere furniture, although some fastenings be necessary to its advantageous use, is removable." *McConnell* v. *Blood,* 123 Mass., 47. Here was a building for manufacturing shoes. Opinion says: In discriminating between different parts of the machinery in question as to whether it was fixtures or not: "The engine and boiler, which were put in to supply the premises with power; the steam gauge, which is essential to the safe use of the same; the water tank, for supplying the building with water for general use; the steam pump connected therewith, and the shafting, evidently designed, has permanent addition to the realty, and could not be removed without seriously injuring the value of the building for use." See *Feedet* v. *VanWinkle,* 33 Atlantic Reporter, 399, where above strong doctrine is laid down.

I do not deem it necessary to go into the subject of recording, as the law in this State is so well fixed by our Revised Statutes, page      , as to the manner of recording the different mortgages, and the authorities are definite and settled.

The case of Winfield Scott, Irving Scott, and Fred McLaughlin, in their own right, and as directors of the Edisto Cypress Shingle Company, against the same defendants, was heard along with this case, and as one decree will settle all the issues, I have desired to fix the status of the different parties; and what I have said as to the plaintiff, R. M. Hughes, and others, is applicable to the plaintiff, Winfield Scott, and others, and it is not necessary to consider the question of dissolution of the corporation, the removal of the president, &c., as that has been done by the appointment of a permanent receiver; and the one question for me to decide is as to the distribution of the funds arising from the sale of this property.

And it is, therefore, ordered, adjudged, and decreed, that C. B. Free, receiver, do sell all and singular the property

of the Edisto Cypress Shingle Company, on salesday in April, 1896, or some convenient salesday thereafter, after having duly advertised the same as required by law, at Edisto Station, county and State aforesaid; and that notice of the sale be published in the News and Courier, of Charleston, S. C., and one gazette in the county of Barnwell, and that the terms of said sales be one-third cash on day of sale, one-third in six months, balance in one year from date of sale, and to be secured by a bond and mortgage of the purchaser, wherein it shall be provided that the property shall be insured in a good company by the purchaser, for at least three-fourths the amount of the credit portion, for the benefit of the mortgagee. And that upon the purchaser complying with his bid, that said receiver do execute unto the purchaser good and sufficient title to said property. That either or any party aggrieved appealing from this part of the decree, the sale shall be stayed upon said defendant depositing with the clerk of this Court a good and sufficient bond, to be executed by the appellant, with three sureties, in the sum of $2,000, said bond to be in the usual form, and the sufficiency thereof to be approved by the clerk of this Court; and out of the proceeds arising from said sale, the receiver do pay: 1. The expenses of sale and cost of this Court. 2. To the plaintiffs' attorney a reasonable fee, to be ascertained by the master, who is hereby directed to hold the reference and ascertain what fee the plaintiffs' attorney is entitled to; and that said fee be paid out of the balance remaining in the hands of the receiver. 3. That out of the surplus funds arising from the sale of the said property the receiver do pay the judgment debts of the various creditors—it being conceded, upon the trial, that all judgment creditors should, and were, to stand upon an equal footing, as if the judgments were obtained the same day. 4. That out of the remaining fund, if any, and the funds arising from the judgment which is hereby awarded against said the Bailey-Lebby Company for the sum of $712.21, proceeds in its hands from sale of chattel property,

after payment of its mortgage debt, the various creditors whose debts have not been reduced be paid in full, if so much funds be in hand; and if not, that said funds be *pro rated* among them in proportion to their indebtedness; and that the defendant's, Perkins & Co., accounts be proven for the amount admitted to be due by the affidavit of Willis J. Perkins, as agreed upon the trial. 5. That the said Willis J. Perkins, trading as Perkins & Co., be required to produce his so-called mortgage and deliver the same to the clerk of this Court, who is required to cancel the same of record. 6. That the said the Bailey-Lebby Company be required to produce its mortgage for cancellation by the clerk of this Court, who is directed to cancel the same, said mortgage being paid in full. 7. That said Diana L. Webb be, and hereby is, required to produce the real estate mortgage executed to her by the Edisto Cypress Shingle Company, which she admits has been paid in full, and which, it is alleged, was executed for the purpose of hindering and delaying creditors; and that upon its production to the clerk of this Court, that the same be cancelled of record, as being void under the statute of Elizabeth. 8. That out of the proceeds, and to be taxed as cost of this Court, a fee of $25 be entered as expenses for the preparation of this decree to the typewriter and stenographer hereby employed by the Court. 9. That either party may have leave to apply at the foot of this decree for such order as to enable said party to carry out the terms hereof.

The following was filed by Circuit Judge, April 3d, 1896:

After a careful reconsideration of the facts herein, my attention having been brought particularly to the consent order of Judge Witherspoon, under date of October 30th, 1894, I have decided to modify my previous decree herein, as far as the mortgage of the Bailey-Lebby Company is concerned, as follows: I find that the mortgage of the Bailey-Lebby Company, dated December 22d, 1893, is a *bona fide* mortgage, and that under said consent order the

amount due thereunder was fixed at $1,500, together with a fee of $100 to be paid their counsel, and I conclude that said order is binding upon all parties to this cause. I find as a matter of fact that there is still due the Bailey-Lebby Company by said Edisto Cypress Shingle Company, under said mortgage, the said sum of $1,500, and that there is due Messrs. Mordecai & Gadsden, attorneys of said Bailey-Lebby Company, the sum of $100, as provided in said consent order.

It is, therefore, ordered, adjudged, and decreed, that the said receiver do, out of the proceeds of sale of said machinery and plant, before applying any of said fund to the judgments against said company, pay over to the Bailey-Lebby Company the sum of $1,500, and to Messrs. Mordecai & Gadsden the sum of $100. My former decree is modified in accordance with the above.

From these decrees all parties appeal.

Exceptions of Perkins & Co.:

1. Because his Honor should have held that the business of the Edisto Cypress Shingle Company was that of manufacturing shingles for that trade.

2. Because his Honor erred in holding that one of the purposes of the complaints in the two actions was to vacate the mortgage of Perkins & Co.

3. Because his Honor erred in holding as a fact that the Edisto Cypress Shingle Company, as a corporation, never intended to, and never did, execute any mortgage to Perkins & Co.

4. Because his Honor erred in holding that the wholly typewritten sheet was pasted on the "Ingram or printed order," after it passed out of the hands of A. N. Webb, either by the agent of Perkins & Co. or after it arrived at the office of Perkins & Co.

5. Because his Honor erred in holding that the register, in recording the Perkins & Co. mortgage, did so without

having it properly probated, and without warrant or authority of law, and said record does not operate as notice.

6. Because his Honor erred in holding that the machinery was shipped by Perkins & Co. to Branchville, and on the payment of $1,000, leaving a balance now claimed to be due, said Perkins & Co. delivered the machinery to the Edisto Cypress Shingle Co. freed from conditions, and that with its knowledge and consent the machinery was placed, with the assistance of their agent, in buildings especially erected for the reception of this peculiar machinery, and securely and firmly fastened to said building, for the purpose of erecting a shingle plant on land leased for a period of ninety years.

7. Because his Honor erred in holding that Perkins & Co. and the Edisto Cypress Shingle Co. intended that this machinery should become fixtures and permanent improvements upon the land.

8. Because his Honor erred in holding that the Edisto Cypress Shingle Co. owned large timber franchises.

9. Because his Honor erred in drawing any conclusions of fact from the argument of counsel, but should have confined himself to the evidence.

10. Because his Honor erred in holding that the building of the Edisto Cypress Shingle Co. was a three story building.

11. Because his Honor erred in finding that said building was within a few feet of the water's edge.

12. Because his Honor erred in not finding that the engine was secured by bolts and nuts, which could be unscrewed.

13. Because his Honor erred in holding that the paper of Perkins & Co. (their mortgage) consists of two parts, and that one was not executed by the Edisto Cypress Shingle Co.

14. Because his Honor held that Perkins & Co. have no lien over the machinery sold by them to the Edisto Cypress Shingle Co. as a chattel mortgage.

15. Because his Honor held that there was nothing in the order of the Edisto Cypress Shingle Co. to make it a chattel mortgage.

16. Because his Honor erred in requiring any appellant

from his decree to deposit with the clerk of court a bond to be executed by him, with three sureties in the sum of $2,000, as a condition to the staying of the sale of the premises ordered in said decree to be sold.

17. Because his Honor erred in decreeing that a fee out of the entire fund be paid plaintiffs' attorneys, to be ascertained by the master.

18. Because his Honor erred in holding that the judgment creditors should be paid ahead of the mortgage of Perkins & Co.

19. Because his Honor erred in requiring Perkins & Co. to produce and have cancelled their mortgage.

20. Because his Honor erred in ordering that out of the proceeds of sale and to be taxed as costs of this Court a fee of $25 be entered as expenses for the preparation of his own decree to the typewriter and stenographer employed.

The defendant, Willis J. Perkins, trading as Perkins & Co., also excepts to the order of his Honor, Judge O. W. Buchanan, dated April 3d, 1896, because he ordered that the receiver do out of the proceeds of sale of said machinery and plant pay over to the Bailey-Lebby Company and its attorneys the amounts therein ordered to be paid; whereas he should have ordered that no part of the proceeds of the sale of the property covered by the mortgage to said Perkins & Co. should be paid to any one but the said Perkins & Co.

Exceptions of plaintiffs are as follows:

1st. Because his Honor erred in rendering the decree on the 3d day of April, 1896, wherein the original decree rendered on the 24th day of February, 1896, and filed in the office of the clerk of the court for Barnwell County on the 26th day of February, 1896, was reversed as to the defendant Bailey-Lebby Company, said Court not having jurisdiction of said causes after the filing of said original decree on the 26th day of February, 1896.

2d. Because his Honor was not the presiding Judge of the Second Circuit at the time he signed and caused to be

filed the decree bearing date the 3d day of April, 1896, and filed on the 4th day of April, 1896, but was the presiding Judge of another Circuit, and had already filed his original decree in these causes on the 26th day of February, 1896, and that the fall term of Court for Barnwell County adjourned on the          day of December, 1895.

3d. Because his Honor was without jurisdiction, after filing the original decree, to make a reversal of said decree.

4th. Because his Honor has no power in law to reverse or materially alter his own decree, after having filed the same with the clerk for record in the proper county.

5th. Because his Honor erred in finding, as a matter of fact, that there is still due the Bailey-Lebby Company by the Edisto Cypress Shingle Company under said mortgage the sum of $1,500, and that there is due to Messrs. Mordecai & Gadsden, attorneys for Bailey-Lebby Company, the sum of $100, as provided in said consent order.

6th. Because his Honor erred in not holding that the said mortgage to the Bailey-Lebby Company had been paid in full by the sale of shingles.

7th. Because his Honor erred in finding that the consent decree, bearing date the 30th day of October, 1894, was binding upon all parties; whereas his Honor should have held that said decree was not binding upon parties who had not come into this action and given their consent to this decree.

8th. Because his Honor erred in ordering the receiver to pay out of the proceeds of said machinery and plant unto the Bailey-Lebby Company the sum of $1,500, and to Messrs. Mordecai & Gadsden the sum of $100, before applying any of said funds to the judgment against said company.

The following are the exceptions of the Bailey-Lebby Company:

I. Because his Honor erred in holding that one of the purposes of the complaints in the two actions was to vacate the mortgages of the Bailey-Lebby Company.

2–51

II. That his Honor erred in holding that the Bailey-Lebby Company and the Edisto Cypress Shingle Company intended that this machinery should become fixtures and permanent improvements upon the land.

III. Because his Honor erred in holding that the machinery covered by the mortgages of the Bailey-Lebby Company were fixtures and improvements, and permanent improvements upon the land.

IV. Because his Honor erred in not finding that the machinery covered by the Bailey-Lebby Company's mortgage was fastened and secured to the building in the usual way, and could be removed at any time without injury to the balance of the plant.

V. Because his Honor erred in requiring any appellant from his decree to deposit with the clerk of the court a bond, to be executed by him, with three sureties in the sum of $2,000, as a condition to the staying of the sale of the premises ordered in said decree to be sold.

VI. Because his Honor erred in decreeing that a fee out of the entire fund should be paid to plaintiffs' attorneys, to be ascertained by the master.

VII. Because his Honor erred in holding that the judgment creditors should be paid prior to the mortgage of the Bailey-Lebby Company.

VIII. That his Honor erred in requiring the Bailey-Lebby Company to produce its mortgage for cancellation by the clerk of the court.

IX. Because his Honor erred in finding that the Bailey-Lebby Company sold shingles embraced in its mortgage amounting in value to the sum of $1,804.77.

X. Because his Honor erred in not holding that the net amount received by the Bailey-Lebby Company from the sale of shingles, after deducting all costs and expenses properly chargeable thereto, was the sum of $692.81.

XI. Because his Honor erred in not finding that all parties to this cause were bound by the consent order re-

ferred to in his decree, and same was binding upon all parties to this cause.

XII. Because his Honor erred in holding that the Bailey-Lebby Company is indebted to the receiver in the sum of $190.92.

XIII. Because his Honor erred in not finding that all other creditors were bound by the consent order referred to in said decree.

XIV. Because his Honor erred in holding that the cash arising from the sale of shingles, amounting to the sum of $789.61, received by the Bailey-Lebby Company, was applicable to the payment of the notes of the Edisto Cypress Shingle Company; whereas his Honor should have held that said sum was properly applied by the Bailey-Lebby Company to the settlement of the open and unsecured account of the Edisto Cypress Shingle Company.

XV. Because his Honor erred in holding that the Bailey-Lebby Company is indebted to C. B. Free, as receiver, as to the other creditors, in the sum of $712.21.

XVI. Because his Honor erred in holding that the mortgages of the Bailey-Lebby Company have been paid in full by the sale of the chattel property.

XVII. Because his Honor erred in not finding that the Edisto Cypress Shingle Company is indebted to the Bailey-Lebby Company, under its mortgage, in the sum of $1,530.16, as appears from the evidence and sworn statement of the Bailey-Lebby Company.

XVIII. Because his Honor erred in not decreeing to be paid out of the fund the sum of $100 to Messrs. Mordecai & Gadsden, attorneys for the Bailey-Lebby Company, as provided for in said consent order.

XIX. Because his Honor erred in not finding that by the consent order above referred to the Bailey-Lebby Company, upon the payment to them of the sum of $1,500, were discharged from the case, and further proceedings as to them were dismissed.

XX. Because his Honor erred in rendering judgment

against the Bailey-Lebby Company, they having been discharged from the case by the consent order above referred to.

XXI. Because his Honor erred in not decreeing that the sum of $1,500, and the further sum of $100 to the attorneys of the Bailey-Lebby Company, should be paid to the Bailey-Lebby Company out of the fund, as provided for by the consent order above referred to in said decree.

*Mr. S. G. Mayfield,* for plaintiff, cites: *Perkins paper identical with that construed in 43 S. C., 39. Machinery so placed as to become fixture:* 29 S. C., 453. *Not error to order mortgage delivered to be canceled:* 45 S. C., 496. *Stenographer's fees properly allowed out of fund:* 27 S. C., 489. *Has Judge power to modify decree after filing:* 6 S. C., 476; 21 S. C., 17; 30 S. C., 329.

*Messrs. Buist & Buist,* for Perkins & Co., cite: *Testimony admitted without objection cannot be afterward attacked:* 104 U. S., 787; 13 S. C., 457; 20 S. C., 343; 24 S. C., 592; 45 S. C., 69; 14 S. C., 508; 36 S. C., 537; 22 S. C., 482; 26 S. E. R., 651. *Corporation through its officers may use scroll for seal:* 1 McM., 215; 8 S. C., 170; 18 S. C., 42; 23 S. C., 314. *Date of probate preceding that of execution of paper does not invalidate it:* 2 N. J. Eq., 108; 3 S. E. R., 917; Cheves Eq., 13; 36 S. C., 204. *This is purchase money mortgage:* 43 S. C., 39. *Contract made by officer of corporation for its benefit is binding on it:* 26 S. C., 87; 41 S. C., 301; 39 S. C., 375; 65 Fed. R., 545; 67 Id., 464; 25 S. C., 309; 5 Wall., 772; 11 Id., 491; 2 McN. & Gov. Eng. Chan. R., 146; 160 U. S., 514. *Stockholder cannot maintain this action:* 127 U. S., 489; 10 S. E. R., 679; 39 S. C., 51. *Purchase money mortgage will be upheld even if not exactly in accord with requirements of statute:* 12 S. C., 364; 28 S. C., 142; 96 U. S., 267; 131 Mass., 275; 67 Fed. Rep., 469. *Machinery not fixture:* 29 S. C., 453; 3 McC., 553; 10 Rich., 135; 14 S. C., 362; 15 S. C., 70; 31 S. C., 267; 33 S. C., 344. *Leasehold interest in realty is personal property:* 110 U. S., 270.

*Messrs. Mordecai & Gadsden,* for Bailey-Lebby Company, argue the facts.

*Messrs. B. W. Miley* and *R. A. Ellis,* for judgment creditors, cite: *Consent decree does not bind them:* 39 S. C., 213; 31 S. C., 91; 23 S. C., 380; 25 S. C., 496; 15 S. C., 565; 93 U. S., 274. *Judge may correct clerical error in decree:* 21 S. C., 17; 30 S. C., 329. *But cannot amend it in important particular:* 32 S. C., 71.

Oct. 19, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. The first stated action had for its object the setting aside of certain mortgages upon the plant and other property of the Edisto Cypress Shingle Company, to the end that plaintiffs and defendants, who had recovered judgment against said company, might have said plant and other property sold to satisfy the executions issued upon said judgments. The second action alleged the insolvency of said company, the invalidity of the mortgages executed by said company, and sought the winding up of said insolvent company, &c., and the appointment of a receiver. The history of these matters seems to be as follows: In the year 1892 (14th day of December) a charter was issued to the Edisto Cypress Shingle Company, by the secretary of state for the State of South Carolina, under the provisions of the act of General Assembly of this State, entitled "An act to provide for the formation of certain corporations under general laws"—19 Stat. at Large, 540; Rev. Stat., 1514–1533—and the acts amendatory thereof. The capital stock was fixed at $10,000, in shares of $100 each. The shareholders were, A. N. Webb, sixty-nine shares; C. B. Mansfield, one share; Winfield Scott, ten shares; Irving Scott, ten shares, and Frederick McLaughlin, ten shares. The object of the corporation, as fixed by its charter, was: "To establish and operate steam, saw and lumber mills; to manufacture and sell shingles, and all other kinds of lumber; to operate and establish tram roads, and boats and

other water craft, in connection with a general lumber and timber business, and propel the same by steam or other power; to buy and sell timber and timber lands, and other kinds of real estate; to conduct a general mercantile business in connection with its timber and lumber business; to operate roads for the purposes of said business, and condemn lands for right of way therefor under existing laws." Its place of business was Edisto, near the Edisto River, in Barnwell County, in this State. The debts owing by the corporation on the 14th day of September, 1894, when the two actions were commenced, were wages to the operatives, a debt of more than $1,700 to the Bailey-Lebby Company, also a debt of more than $1,700 to Willis J. Perkins, operating under the name of Perkins & Co. The debts to the Bailey-Lebby Company and Willis J. Perkins, as Perkins & Co., were for machinery and mill supplies. Both of them begun their sales of machinery and mill supplies about 9th February, 1893, and endeavored to secure themselves by taking purchase money mortgages of the property so sold by them, respectively, to the Edisto Cypress Shingle Company. Judge Witherspoon appointed C. B. Free, Esq., as receiver to hold the property—all parties acquiescing. His order fixed the debt of the Bailey-Lebby Company at $1,500, and held its mortgage good, and also ordered a fee of $100 to be paid to Messrs. Mordecai & Gadsden as its attorneys. The master for Barnwell County took the testimony on all the issues of fact.

The cause on the pleadings and testimony came on to be heard before Judge Buchanan in open court at Barnwell, S. C. By his decree he held the Bailey-Lebby mortgage paid in full, and declared the Perkins mortgage to be invalid. Several months after his decree had been filed, and after he had finished his judicial labors on the Second Circuit, of which Barnwell is a part, he modified his decree by restoring the Bailey-Lebby mortgage for $1,500 and Mordecai & Gadsden's fee of $100, as provided for in Judge Witherspoon's decree. From this attempt to modify his

decree and from the decree itself appeals were taken.  Let
the decree and the several grounds of appeal be reported.

It is now my duty to pass upon these appeals.  First, I
will consider the appeal of the Bailey-Lebby Company;
second, the grounds of appeal presented by the plaintiffs;
third, the grounds of appeal presented by Willis J. Perkins,
trading as Perkins & Co.  The grounds of appeal presented
by the Bailey-Lebby Company, except those relating to
fixtures, may be disposed of without enumerating the spe-
cific grounds of appeal presented by it.  Unquestionably
the order passed by Judge Witherspoon on the 30th
October, 1894, wherein he adjudged that the Bailey-
Lebby Company held two valid mortgages, and that
the debt secured by the said two mortgages was $1,500,
and that counsel fee of their attorneys, Mordecai & Gads-
den, was $100, and two such amounts should be pa d out
of the property not included in the Willis J. Perkins mort-
gage, was and is binding upon every party to this action,
except Willis J. Perkins; and, so far as the latter is con-
cerned, it binds him in so far as the property embraced in
said two mortgages of Bailey-Lebby Company is not set out
in the Perkins mortgage, for the simple reason that W. J.
Perkins, when offered an opportunity to canvass the said
mortgages, was not able to show any matter which would
in the least trench upon the conclusion reached by Judge
Witherspoon.

The only serious trouble Bailey-Lebby Company has is
in showing that their debt of $1,500 has not been either
wholly or partially paid by the shingles which, under Judge
Witherspoon's order, were ordered to be sold by C. B. Free,
as receiver, and the proceeds arising from such sale
applied to the debt of $1,500 adjudged to be due to
the Bailey-Lebby Company.  The very terms of
that order ought to have made the Bailey-Lebby Company
very careful in seeing that the proceeds arising from the
sale of these shingles should be scrupulously applied to the
payment of their mortgage.  Here is the language referred

to: "It is further ordered, that C. B. Free, receiver, do forthwith proceed to sell the shingles, 1,300,000, more· or less, covered by said mortgages (Bailey-Lebby), upon best terms possible, with the consent and approval of the Bailey-Lebby Company, and have the drafts in settlement for the payment of said shingles, together with the bills of lading in shipment thereof, made payable to the order of Bailey-Lebby Company, who are hereby authorized and empowered to apply the proceeds of said shingles, *pro tanto*, to the payment of the said sum of $1,500 so found to be due; and that if, within a reasonable time, said shingles cannot be so disposed of at private sale, that then the said C. B. Free, receiver, with the consent of the said the Bailey-Lebby Company, is hereby authorized and empowered to sell and dispose of the remainder of said shingles upon the best terms possible, the gross proceeds thereof to be paid to the said the Bailey-Lebby Company forthwith." This order, being a *consent order*, may be regarded in the nature of a contract between the parties who made it, and, as we have previously seen, all the parties to the two actions, except Willis J. Perkins, were parties consenting thereto. C. B. Free and the Bailey-Lebby Company sold shingles from 30th October, 1894, to April, 1895, for the sum of $1,185.46, and personal property (pair of mules, $100, one pair of oxen, $25, and one ox for $12.50,) for $137.50—aggregating the sum of $1,322.96. By the return known as No. 65, out of this sum was paid: Telegrams, $1.50; amount paid A. McFail, watchman, $60; insurance, $107.50; C. B. Free, $7.50; 2d January, 1895, paid A. McFail, $62; 2d January, 1895, paid W. R. May, $50; February 2, paid A. McFail, $54.25; February 21, taxes, $46; February 26, paid C. B. Free, $71.50; March 2, paid A. McFail, $49; April 3, paid A. McFail, $54.25; May 4, paid A. McFail, $30; June 4, paid A. McFail, $30—aggregating $699.45, less $6.64 received for shingles February 26, 1895, makes $692.81. I cannot agree that this is a proper expense account. While I might be willing to assent to the expenses of handling these shin-

gles, by way of labor in putting on board of cars, and expenses of transportation, I cannot recognize payment to W. R. May, insurance, taxes, and watchman fees as proper disbursements out of this fund, nor, indeed, any of these payments out of this particular fund. This corporation, the Bailey-Lebby Company, are entitled to be reimbursed these amounts when the sale is made of property not covered by their two mortgages, as well as that of Willis J. Perkins; but they must now be required to give credit on their debt of $1,500 of the sum of $1,329.60, which last amount is obtained by adding the $6.64 received from the Augusta Lumber Company for shingles in February, 1895, to the $1,322.96. The fee of Mordecai & Gadsden should be paid, but not out of any property or money coming to Willis J. Perkins on his debt and mortgage.

Now I will proceed to notice the grounds of appeal presented by the plaintiffs. I agree with the plaintiffs that his Honor, Judge Buchanan, erred in his attempt to modify his decree, filed in February, 1896, by his modification filed 4th April, 1896. He was not either the presiding or the resident Judge of that Circuit in April, 1896, and he had no right to attempt to interfere with his decree, even if he knew he was guilty of error therein. There is another tribunal, under the Constitution and laws of this State, for the correction of errors in judgments and decrees of the Circuit Courts. Of course, the motive of the Circuit Judge was lofty; he wished to correct an error into which he had most innocently fallen. I have already held that the $1,500 debt held by Bailey-Lebby Company must be reduced as hereinbefore indicated. I do not hold that the mortgages of the Bailey-Lebby Company have been fully paid, but only partially paid. I do hold that the parties plaintiff and defendant, except Willis J. Perkins, are bound by the decretal order of Judge Witherspoon, dated 30th October, 1894, for they consented to the same. And, as to all of these parties, such decree of Judge Witherspoon fastens upon the property of the corporation,

except that belonging to Willis J. Perkins, the payment to Mordecai & Gadsden their fee of $100, and for the same reason, these parties consented thereto.

Lastly, it is my duty to pass upon the exceptions presented by Willis J. Perkins, trading as Perkins & Co. Such of these grounds as refer to the attempt by Judge Buchanan to modify his decree, after he had left the Second Circuit and returned to his duty as resident Judge of the Third Circuit, have been practically disposed of under the first and second divisions of this opinion. The remainder bears upon the alleged errors of Judge Buchanan in his decree, wherein he held that the paper presented by Willis J. Perkins was not entitled to be treated as a valid mortgage, both intrinsically and extrinsically; *intrinsically*, because the paper was made up of two parts not connected with each other and not signed by each of the parties thereto as a mortgage; and *extrinsically*, because, first, the Edisto Cypress Shingle Company had no power to execute a mortgage, save under the terms of the act of 1886, hitherto quoted by its title, as regulating the powers of corporations formed under the general laws of this State; second, because the property covered by such mortgages had become fixtures, and were not the subject matter of a mortgage of personal property or chattel mortgage. I will examine the intrinsic defects of this alleged mortgage. This corporation, the Edisto Cypress Shingle Company, was formed on the 14th day of December, 1892. On the 7th day of February, 1893, it entered into a contract with Willis J. Perkins, as Perkins & Co., through his salesman, S. S. Ingram, for furnishing the engines, shingle machines, shafting, pulleys, etc., as set out in the Judge's decree. Willis J. Perkins' manufactory was located at Grand Rapids, in the State of Michigan, and he was represented in his transaction with this Edisto Cypress Shingle Company by his salesman, the said S. S. Ingram. That part of the instrument called a mortgage, which contained the terms and conditions intended to control the rights of

the seller and purchaser, was made up of a partly printed
and partly written paper, in which, among other things,
the seller stipulated that title to the property so sold should
remain in him until the purchase money should be paid;
and the other, which was typewritten, contained a specific
enumeration of the prices of machinery desired by the
Edisto Cypress Shingle Company. At the top of that
part which was partly printed and partly written, the date
"23d February, 1893," appeared, and upon the typewritten
part the date was "7th February, 1893;" the date of affi-
davit of witnesses to signature was "7th February, 1893."
The whole of the instrument was placed on record on the
28th March, 1893, in the office of register of mesne convey-
ance for Barnwell County. The president and general
manager of the Edisto Cypress Shingle Co. acted toward
the property as if it were covered by the whole instrument.
This appellant raises the preliminary question that Judge
Buchanan should not have entertained this question, be-
cause all the parties to the suit had consented before the
master that the instrument "chattel mortgage given by
Edisto Cypress Shingle Co. to the Perkins Company was by
consent introduced in evidence and marked Exhibit X."
Such is the language found in the case at folio 249;
there was no other evidence offered by either side as to
this instrument. It does seem to me that all parties hav-
ing consented that this instrument should be in evidence
as a chattel mortgage, they cannot now attack the instru-
ment as to its mode of execution; for by consenting that it
be admitted in evidence, they thereby virtually stipulated
that the introduction of testimony as to its execution
would not be required. It is too late now for them to
interpose objections that such instrument was composed of
two parts, and that the Edisto Cypress Shingle Company
only executed one part and did not execute the other. If
there was no testimony in the cause showing that the
Edisto Cypress Shingle Co. only signed one part and did
not sign the second part of an instrument, which was by

consent received in evidence as proved, I am unable to see how the Circuit Judge could make his finding of fact on this branch of the cause. Such being my conclusion, it is unnecessary for me to linger over the exceptions pointing out this alleged error in the Circuit Judge in such finding. This, too, will dispose of the motion of Willis J. Perkins to suspend the appeal until he could apply to the Circuit Court for a new trial upon after-discovered evidence. This ruling disposes of the third, fourth, thirteenth, and fifteenth grounds of appeal, and they are sustained.

The next ground of appeal is that relating to so much of his Honor's decree as holds that the machinery furnished by Perkins to the Edisto Cypress Shingle Co. has become fixtures, and this having taken place with the knowledge and assistance of Perkins, any lien on said machinery through his alleged chattel mortgage is destroyed. Reduced to its last analysis, it is contended that this machinery is now a part of the real estate of John May, who owns the fee in the lands upon which the mill of the Edisto Cypress Shingle Company is located, and being so, no chattel mortgage can have a lien thereon. It is a fact that such owner of the fee in this land is not a party to this action. In *Ex parte Dickinson, as assignee, in re Sheldon* v. *Blauvelt*, 29 S. C., 453, Dickinson was the assignee of the owner of the land upon which the cotton gins and portable engine and saw mill were located, and, therefore, the owner of the fee, was before the Court; but while the Circuit Judge, Hon. W. H. Wallace, did discuss the law on this subject of fixtures, yet the Supreme Court distinctly declined to pass upon these matters, for the reason that they had reached a conclusion which rendered it unnecessary for them to do so. This case is referred to as an authority by the Circuit Judge in his decree. While it is not an authority, still it serves to illustrate the law very admirably. I am not informed to what uses the owner of the fee, May, put this land while he retained control of it; he did lease it for ninety years to the Edisto Cypress Shingle Co., and as their charter was placed

upon record, he may be assumed to have known, at the time of the lease, that his lands would be devoted, while in the hands of his lessee, to the location of their mills for the manufacture of cypress shingles. But, as before remarked, May is not before this Court. Here we have only as parties to these two actions the creditors of this insolvent corporation, the Edisto Cypress Shingle Co., and it is their rights I must consider. As was remarked by the Circuit Judge, in *Ex parte Dickinson, in re Sheldon* v. *Blauvelt, supra,* "There is a preliminary question as to the nature of some of the property attached—that is, the cotton gin and the engine and saw mill. Are they fixtures, and, therefore, a part of the realty, or are they personal property? The weight of the testimony indicates that the cotton gin was attached by the bands to the gin house, and in such case it has been held in several cases that a cotton gin is a fixture." See *Fairis* v. *Walker,* 1 Bail., 540; *Nimmons* v. *Moye,* 1 Rice Dig., 317; *McKenna* v. *Hammond,* 3 Hill, 331. Although the precise question has not been decided in this State, I think it equally clear that the portable engine and saw mill are not fixtures. A cotton gin is a fixture, because it is not only attached to the soil, but is, when in a permanent gin house, obviously intended to be permanent, and is necessary for the convenient use of a cotton plantation. Where a structure is placed upon land, not to promote the convenient use of the land, but to be used for some temporary purpose, external to the land, and the land is used only as a foundation, because some foundation is necessary for the business, then the structure and its belongings are not fixtures. The testimony in this case is to the effect that the portable engine and saw mill, although in some degree attached to the soil, were used for the promotion of the business of sawing logs into lumber, and had no relation to the convenient use of the plantation as such. The engine and saw mill, therefore, in my opinion, are personal property. In the case at bar there is testimony that the boiler is encased in brick; that the wheels are adjusted to shafting which is turned by belts,

and that these are fastened to the mill house. I should hold from the terms employed in the chattel mortgage of Perkins, that he had knowledge that the machinery ordered from him and covered by his mortgage was to be placed in a mill house. After this has been admitted, I cannot see how the conclusion of the Circuit Judge can be sustained. He holds that all this machinery furnished by Willis J. Perkins became fixtures and was a part of the real estate of May, the owner in fee. Then, if this be so, of what concern is it to these judgment creditors—how can their judgments operate so that such creditors have any lien upon May's real estate? It is evident that this difficulty did not present itself to the mind of the Circuit Judge, for in this very decree he has "Ordered, &c., that Free, as receiver, do sell all and singular the property of the Edisto Cypress Shingle Co. on salesday in April, 1896, * * * And that upon the purchaser complying with his bid, that said receiver do execute unto the purchaser good and sufficient title to said property." It should be asked what property is this to be so sold, and to which the receiver is to execute to the purchaser thereof a good and sufficient title? If all this machinery has become a part of Mr. May's land, how can the receiver sell Mr. May's land? If, on the other hand, the plant of the Edisto Cypress Shingle Co. on the land leased from Mr. May for the term of ninety years is but a leasehold estate, and as such is but personal property, and, therefore, may be sold, what is there to prevent such a separation of such property, to the end that the lien of W. J. Perkins under his mortgage, on such separate property as is embraced in his mortgage, may be preserved? I can see no difficulty in regard to it.

Again, it is suggested that there was no power in the officers to execute a mortgage on property sold to this corporation, because the act of 1886 required that when a bonded indebtedness to be secured by a mortgage was contemplated by the corporation, that notice thereof had to be given by a publication of such purpose, and that a meeting of the directors was an essential prerequisite to the ex-

ercise of such a power by this corporation; and it is contended in the cause at bar that there has been no compliance with either of these prerequisites. In the first place, I do not admit that the bonded indebtedness referred to in sections 29, 30, 31, and 32, of the act of 1886, can be said to include the purchase money of the plant, or any part thereof, plainly necessary to the execution of the charter purpose. But waiving this matter altogether, the parties to these actions are in a court of equity, where it has been made to appear that before Willis J. Perkins would part with his property to this corporation, he required that its officers should execute to him a lien thereon by way of chattel mortgage, and that notice thereof was spread upon the records of the office of the register of mesne conveyance for Barnwell County; and to the extent of the property so parted with by Perkins, he has an equity superior as to that particular property over these subsequent creditors with notice, and it was error for the Circuit Judge to hold otherwise. The language of section 26 of this act of 1886, provides that "every private corporation, as such, has the power * * * 4. To hold, purchase, lease, mortgage, or otherwise dispose and convey such real and personal estate as is limited by its charter; and, if not so limited, such an amount as the business of the corporation requires * * *" Such are my views hurriedly presented on these questions.

Now, as to the $25 ordered to be paid a stenographer for assisting in the preparation of the Circuit decree, of course, it will not stand. The Circuit Judge was without power to make this application of the funds of this corporation.

Nor did the Circuit Judge have the power to exact a bond of $2,000 of each litigant who might wish to appeal from the order of the sale as made by the Circuit Judge in his decree. There is an entire absence of statutory authority for the exercise of any such power by the Circuit Judge, and there is no warrant there-

for in the common law. The property of litigants is and
should be most jealously guarded by the courts of the
country, and in no case should be taken away from them
without due process of law. To allow any Judge, either
of the Supreme Court or of the Circuit Court, to hire with
funds of the litigant a person to do his writing, would be
an innovation upon our customs as well as our laws. It
cannot be permitted.

I think and hold that our judgment should be: it is the
judgment of this Court, that the modified decree of his Honor,
Judge Buchanan, dated the 3d of April, 1896, be annulled;
and it is the judgment of this Court, that the decree in the
two actions be modified as herein required, and that the
cause be remanded to the Circuit Court, to formulate such
orders as may be necessary to carry out the views herein
announced. But it is my duty to announce, by reason of
the views of Chief Justice McIver, which are concurred in
by Justices Gary and Jones, that the judgment of this Court
is, that the foregoing views and conclusions as announced in
my opinion stand as the judgment of this Court, except
that the Bailey-Lebby Company shall not be required to
credit on their mortgage debt the gross amount of the sales
of the shingles and other property covered by its mortgage,
but only the balance thereof, after deducting the expenses
properly incurred in handling and taking care of such pro-
perty, in which should be included amounts paid watch-
men, and insurance while waiting an opportunity to sell,
and also the expenses of loading the same for transporta-
tion, but not amounts paid on the lease or for taxes, except
so much thereof as were properly chargeable on the pro-
perty sold, and that the cause be remanded to the Circuit
Court, with directions to enforce therein the views herein
announced.

MR. CHIEF JUSTICE McIVER. I concur in the result,
except that I think the Bailey-Lebby Company should not
be required to credit on their mortgage debt the gross

amount of the sales of the shingles and other property covered by their mortgage, but only the balance thereof, after deducting the expenses properly incurred in handling and taking care of such property, in which should be included amounts paid watchmen and insurance while awaiting an opportunity to sell, and also the expenses for loading the same for transportation, but not amounts paid on the lease or for taxes, except so much thereof as were properly chargeable on the property sold.

JUSTICES GARY and JONES concur in the opinion of MR. CHIEF JUSTICE McIVER.